Good morning, Your Honors. I am Ricardo Quintanilla from Quintanilla Law Firm on behalf of Petitioners Mr. and Mrs. Urbina. On behalf of Petitioners, we want to thank the Court for appointing amicus curiae to argue in this case. They are seated at the Petitioner's table. Alana Rutter from Ginner, Martin, Stein & Richland and Jonathan Rutter, Kaye & Scholler. Ms. Rutter will make the argument on behalf of Petitioners. I will just make a brief introductory remark. Petitioners are natives of Venezuela. They are raising three United States citizen children. This is an immigration law case that involves a claim of ineffective assistance of counsel. When that case was presented to the BIA, the agency in this case, the government never opposed the motion to reopen. And it is the decision of September 7, 2006, that we believe is in error. And Ms. Rutter will continue the argument. Thank you. Counsel, in the motion to reopen, did the Urbinas identify the claim of ineffective assistance of counsel? Yes. It is contained in the motion to reopen. In the initial motion to reopen that was made, they made No, the motion to reopen that's in front of us right now, did they preserve that issue? Did they raise the issue of ineffective assistance of counsel? I believe so, Your Honor. And that is the issue that Ms. Rutter will discuss and will address those concerns. Thank you, Your Honors. Thank you. Good morning, Your Honors. Alana Rutter, court-appointed amicus counsel in support of the Petitioners. All we are asking for in this case is a remand to the BIA to decide the issue of ineffective assistance on the direct appeal to the BIA, which we think affected the continuous presence showing. And that's a claim that the BIA has never reached and should do in the first instance. To answer Judge O'Scanlan's question, the ineffective assistance claim was presented to the BIA. It's in the initial motion to reopen, which is in the administrative record at pages 128 to 129. I can read to you from that. This was ineffective assistance at the hearing? Well, there was an effect to both at the hearing and on the direct appeal to the BIA. But what was raised to the BIA? Both, Your Honor. And when was the ineffective assistance of counsel on appeal raised? In the initial motion to reopen, at page 129 in the record, it says, the board may reopen a case when a claim for ineffective assistance of counsel is made. Such a claim is hereby made for reinstatement of the appeal and for a meaningful opportunity to brief the incident case. So the reference to a request to brief the case can be construed as an argument of the 129 of the administrative record. It's the motion to reopen at lines 11 through 15. I guess you see this is a claim of ineffective assistance of counsel on appeal? When read in conjunction with the previous argument at the same page, lines 8 through 10, Gladys told my wife and I that she was going to handle the appeal to the Board of Immigration Appeals. On May 3, 2004, the board denied our case. And then he goes on, we're seeking a meaningful opportunity to brief the incident case. Briefing is generally what happens before the BIA. If it says briefing counsel before the BIA, but where does it say there's a contention of ineffective assistance of counsel on that briefing? Your Honor, it's not explicitly said, but given that that's what the request was, in conjunction with the grossly ineffective brief that was filed before the BIA in the direct appeal, and the reference to the fact that the notary Gladys had told my wife and I she was going to handle the appeal, and then the board denied our case. Counsel, I have two concerns. Maybe you could address them. Sure. One is that I thought there was a sentence in the petition saying we are not claiming there was ineffective assistance of the lawyer on the appeal. And second, I thought the brief was signed pro se, that it said it was a brief of petitioner pro se. If a brief says it's pro se and not by counsel, how can there be a claim of ineffective assistance of counsel? Okay, Your Honor, I'll try to take those in order. On the first question about whether there was a concession that they weren't arguing ineffective assistance on appeal, actually what the statement was was that they were not arguing that ineffective assistance affected the continuous presence showing before the immigration judge. That was specifically what the statement was that has caused some confusion. And it is true that the motion said that. That's in the administrative record at page 40. And just to be clear, and that was the brief to the board? That was the brief to the board, the last brief that was submitted to the board before the opinion that is on review here. There were a number of briefs submitted to the board because this case has bounced around. And that was signed by whom? This was signed by Mr. Quintanilla because this was there. This was not their direct appeal. This was on the motion to reopen briefing, at which point they had already hired Mr. Quintanilla to make the ineffective assistance claim. And there's no claim that Mr. Quintanilla is ineffective? No one has made that claim in this case. And so why? Just to follow up on Judge Gould's question, why is the client bound by that representation? We think they are bound by that representation. But we read the representation in a different way than the government and the BIA have. What the representation says, it says, Respondents are not claiming that the IJ's finding of lack of presence was the result of ineffective assistance of counsel. What we think this meant was that they are not arguing that the ineffective counsel failed to put in evidence before the IJ of continuous presence. The argument is that the IJ made a legal error in weighing the evidence that was before him and that ineffective assistance in the direct appeal prevented the Urbinas from showing what that legal error was. So when he says we're not claiming that the IJ's finding of lack of presence was the result of ineffective assistance, that's because the lawyer before the IJ put in all the continuous presence evidence. But the IJ made the legal error in assessing that evidence, and they have never had a chance to point out those legal errors to the BIA because of their ineffective assistance on direct appeal. Who was the lawyer on direct appeal who did the ineffective assistance? Right, that was your second question. I thought it was assigned as a pro se brief. It was assigned as a pro se brief, but the Urbinas said in a sworn affidavit that they believed their notary was handling the appeal. And there's no indication that they were actually aware of what was happening in the appeal or that they in fact signed it. There are multiple cases in this circuit which we cited in our brief where a document was filed with the BIA which purports to be improper, and it turns out that the immigration lawyer or notary had signed the brief improper without the immigrants knowing what had happened. And there's the Ray case which we've cited. It's happened multiple other times. And there is the case law in this circuit is that they haven't actually said that they didn't file the brief, have they? Well, they said that Gladys told them she was handling the appeal. Well, that's entirely possible for Gladys to have said that, and it's entirely possible that she handled the appeal by handing them a set of briefs that purported to be in their name and just said, go file them. And they did. There's no logical inconsistency between those two. And they have never said, we didn't file the brief. We don't know anything about the brief. Our name appears on the brief, but it's not us. That's true. But this is a factual determination. The BIA didn't reach this question. The government had never challenged until the final briefs in this court whether they were appropriate or not. And I think that's a determination for the BIA to make in the first instance. In this case, this court in Ray remanded for the BIA to make that decision. Why wouldn't this be something they would have had to have claimed? If they're claiming ineffective counsel and appeal, why isn't there something they would have had to say at the time they raised the ineffective counsel and appeal? Well, as I say, I think that they were arguing that they had ineffective assistance on appeal below. And no one at that point had challenged whether they were improper or not. The government, again, didn't raise that until now, so they had no reason to make a further affirmative showing once they had said we had ineffective assistance on counsel. But they could have, right? They could have. I'm sorry. They could have said that. They could have, Your Honor. But they said as much as they thought they needed to raise their opinion. They also did not put in any evidence of what they would show, right? That's ineffective assistance on appeal? Well, they asked for a chance to brief it. In their final brief before the BIA, they did lay out the argument that they would make had they had effective counsel on the direct appeal. There's a legal argument about the weight of the evidence and the errors that the IJ made. They didn't put in any profit evidence? No. Because the ineffective assistance on continuous presence was the failure to make a legal argument before the BIA, they didn't put in new factual evidence, because their argument is not that the counsel failed to present relevant factual evidence. The argument is that the counsel failed to make relevant legal arguments, and they've now presented those relevant legal arguments, which I think is all that they're saying. So there are no new facts? There's no additional? Not as to continuous presence. The new fact is the ineffective assistance of counsel. There's no new facts like new addresses, envelopes, stuff like that? Not as to continuous presence, Your Honor. And I want to make sure to save some time for rebuttals. I'm happy to continue answering questions. We'll hear from the Governor. Okay. Thank you. Good morning, Your Honors. Collette Winston for Attorney General Eric Holder. May it please the Court. The facts before this case are Mr. Urbina and his wife are citizens of Venezuela. They filed for cancellation of removal. Following their 2003 hearing, the immigration judge found insufficient evidence of continuous physical presence from what I call the gap years of 1990 to 1993. The immigration judge found that the documents presented by the Urbinas were of little probative value and that their witnesses were not reliable. The immigration judge also found that they did not meet their burden of proof as to exceptional and extremely unusual hardship. There are four requirements for cancellation of removal. They did not meet two out of four of the requirements. An appeal ensued, which was pro se. Then six board decisions followed, including three motions to reopen and a motion for reconsider. The sixth board decision is the only board decision before the Court today. Not the appeal from the immigration judge's decision, but the sixth board decision, which denied the motion to reopen. So Your Honor was correct in saying that the motion to reopen, which was filed in 2004, pages 127 to 133, is the only motion before the Court today and the board's decision, of course. The board found the motion to reopen to be timely. However, the board denied the motion to reopen on the merits for two reasons. One, the board found that there was no the board specifically said that the petitioner was not claiming ineffective assistance of counsel for the continuous physical presence requirement. Counsel, what do we do with page 129, lines 12 through 15? That's in the motion to reopen that is the subject of this appeal. Certainly the motion to reopen raised ineffective assistance of counsel, and that's what lines 12 through 14 state. But if you look at the whole motion and the attachments to the motion, those were clearly raising ineffective assistance of counsel as to hardship, but not as to continuous physical presence. And the Urbinas need both in order to have succeeded on their cancellation of removal. So what was attached to the motion to reopen was a psychological report as to one of their children alleging problems in school and problems with attention deficit disorder. But the motion to reopen did not address continuous physical presence. It only slightly did it address continuous physical presence, and it didn't add any new evidence, as Your Honor pointed out. It didn't add any affidavits as is required for a motion to reopen. Instead, the only thing that they stated was that the IJ was incorrect in weighing the evidence. Well, that's not ineffective assistance of counsel. That's error on the part of the immigration judge. So the board, in an effort to be thorough, noted on page 16 of the record the very words of counsel who's present in court. And that was, the words were, the board said, the only thing that the judge said, the only matter currently before this board is the respondent's motion to reopen, which raises ineffective assistance of counsel claim relating only to the issue of exceptional and extremely unusual hardship. And then the board quoted the appeal brief which was submitted after the motion to reopen had been submitted, the appeal brief that was submitted for this sixth board decision. And the board quoted, respondents are claiming that they had sufficiently demonstrated their physical presence and that the IJ erred in not finding the testimony of their witnesses attesting to this credible. The next sentence is the key sentence in this case. Respondents are not, and the word not is in all caps in the original, claiming that the IJ's finding of lack of presence was the result of ineffective assistance of counsel. That's on record page 16. And the board quoted it in its decision. So what the board did is the board had a motion before it, and the motion dealt with ineffective assistance of counsel as to hardship. So the board decided to go further and say, well, let's assume they want to reopen as to continuous physical presence. Then it looked at continuous physical presence in kind of a vanilla-flavored view, and the board decided that it had, the Urbinas failed to show new evidence. And according to the statute. According to counsel, what they're saying is, look, we're not saying that we needed new evidence or that the evidence submitted wasn't sufficient. What we're claiming is that the lawyer or that the appellate brief did not raise certain legal issues that we think should have carried the day in terms of continuous physical presence. Well, they didn't say what legal issues should have been raised, but my view is that they, what they said is that they didn't, the lawyer didn't argue strenuously enough to say that the record did show continuous physical presence. Did they offer additional evidence of continuous presence? No additional evidence of continuous physical presence. So it's very hard by argument to close the gap in terms of four years. The way that the gap could have been closed would have been on a motion to reopen bringing forth school records because Mrs. Urbina testified that she went to school during those years to learn English. Another way the gap could have been closed is by bringing the minister or the pastor of the church because they also said in their testimony that they went to church, they attended church every Sunday, page 267 and 268. They also could have brought forth affidavits or even witnesses at the beginning with regard to the family that they lived with in 1990, 1991, at least they alleged they lived with them. So there was nothing from that family called Rendon. That's on page 243. But what they do have, they have the anchor date, which is 1990, right, which the government concedes. Well, January 1st of 1990 is when they were alleged to have entered the United States. And that's alleged by the United States. It's alleged by the United States. And therefore that's an anchor date. The United States has never withdrawn that. So we take that as a starting date. Well, certainly one could take that as a starting date, but there's 365 days in the year. If you let me finish. I asked you, can we take this as a starting date? Yes, I believe you can take that as a starting date. Okay, there we go. But there's no home run. There we go. That's easy. Just stop. You're asking my questions. Stop. Okay. Then we have their statements, their affidavits, their testimony, their sworn statements, that they were in the United States continuously except for one visit to Venezuela for family. Two visits to Venezuela, one month each. One month each, two visits. Okay. But the total time away from the United States, according to their affidavit, that was less than six months, a couple months, right? Correct. And if that is believed as true, then that would be sufficient, right? If it was true, that would not be sufficient. It would be sufficient to show their credibility, perhaps, but it isn't sufficient to show their burden of proof. Because burden of proof and credibility are really two different issues. One can credibly say something but still not meet one's burden of proof. How is that? Because they didn't bring forth enough evidence to convince the fact finder, in this case the immigration judge, that they were present. I don't think you heard my question. I said if believed. If believed. If they make the statement, if believed, that's sufficient to support the finding that they were here continuously. Even if believed, Your Honor, my position is it would not support a finding of continuous physical presence. Really? How is that? Because if that were the case, then every petitioner, in order to meet their four requirements for cancellation of removal, would simply need to say, I was here for those ten years, and not bring forth any more evidence. Okay. I'm not sure what that says. You say if that were true, this would be the case. Well, maybe that is the case. I don't understand. Why are the sworn declarations of petitioners not enough? I mean, you're positive that people have purged themselves. But I'm saying if they put in this evidence, and they are believed, I just, as they are credible, I believe what they're saying, how could that not be enough? I don't understand. You are very prejudiced about different rules of evidence than every other common law jurisdiction in the world? No, Your Honor. Or do we sort of have quantums of proof? You have two witnesses, like for treason? Well, I believe it's a weighing of the evidence. And I believe... I said if believed. If the IJ says, look, I believe them, they're credible. I believe them. That would not be enough in your view? I'm trying to understand this, because I find it just amazing that you would say that. Well, Your Honor, there's a case called Vera Villegas. And in Vera Villegas... Well, let me just ask you one question. I mean, are you sticking to that? Do you think that if believed, it's not enough? I suppose if they were so credible as to meet their burden of proof, then it might be enough. In Vera Villegas, if I could just refer to another case, the petitioner was homeless, and he was also mentally ill. So the reason for his lack of documentation was justified. There was a reason why he lacked documentation. Is there some independent requirement of documentation, which I'm not aware of, that your word is not enough, you've got to come up with documentation? Is there some requirement like that? There's no statute or regulation that I'm aware of, Your Honor. Is there a case that says that? There are many, many, many cases that deal with the weight of the evidence and whether the petitioner lacked sufficient documentation. There's one case, Hernandez-Gonzalez, that was the subject of one of my 28J letters. And there this Court found that the petitioner provided insufficient evidence of his continuous physical presence. Now, with respect to this particular case, apparently the IJ had some concern about a four-month, excuse me, a four-year gap. What provoked that concern? Why did that come to the fore? The concern that the IJ had was because there was a lack of evidence in the record for those four years. There was sufficient evidence for the remaining six years. There was not an issue as to that. But there was no evidence as to those four years that they were here, apart from their testimony. When you say evidence, you mean evidence beyond the statement that our Chief Judge has been referring to, that, yes, indeed, we were here this entire time? Yes. Beyond their, what the immigration judge found to be self-serving statements, beyond their statements at their hearing, there was no tangible evidence produced. Did the IJ find them not credible? No, the IJ made no finding whatsoever about credibility. What's the rule that requires documentary evidence in addition to the testimony? I'm not aware of any rule, but I am aware of a multitude of cases where the immigration judge has to determine whether the petitioners met their burden of proof. So it goes to burden of proof. Counsel, I have a question for you. Yes, Your Honor. Is their burden of proof anything more than just saying or showing that it's more probable than not that something occurred? Is their burden of proof more than showing it's more probable than not that certain things are the facts? Their burden of proof has to be substantial evidence. And, Your Honor, that's correct. That is the burden of proof here. And they did not meet it. Regardless of the fact that they were credible, they still did not meet the burden of proof. It goes to the weight of the evidence. Was the IJ required to make a credibility finding? I mean, one way or the other, say I believe them or I don't believe them? The only credibility finding that the IJ made was as to the two witnesses that they brought. I understand. But I believe we have to just assume that they were credible because there was no adverse credibility finding. Well, if we assume they were credible, why isn't this the end of your case? If they are credible, they have evidence that they were here for 10 years, and that's why is that the end? And why is that ineffective to fail to make that to the BIA? Which is to say you've pretty much given away your case now. No, not at all. Because just because they say they were here and that they were credible. Well, certainly you have to assume they're credible. If you have to assume they're credible, that means you have to believe what they're saying. And if you believe what they're saying, then they have established that they've been here. I don't know how you can get around that. But they didn't close the gap that was left open by the lack of documents in the record. But you don't need documents. You just need evidence. And why isn't their statement, which you now have said is presumed to be credible, why isn't that enough? Because the fact finder found that it was not enough, that while it was enough for 6 years out of 10, there was nothing showing the 4-year gap, and there was nothing explaining why they didn't bring forth any documents, any school records or church records or neighbors or people. And, Eugene, you have a case that says that you need documents, that a credible statement of that effect is not enough. You have a case saying that. Vera Villegas said that only where there's such an exception where the person was homeless and mentally ill would documents not be required. It said only? Yeah. Vera Villegas is 330 Fed Third 1222. And there the petitioner brought forth lots of evidence. I'm sorry. What does it say on there? I've got the case. I'm looking for the word only. It's more than provable. The court there noted, quote, in addition to live testimony. What page? This is page 1229. Okay. I'm with you. In addition to live testimony from witnesses, Vera presented affidavits from numerous people who corroborated his physical presence in the United States in 1989 and 1990. And then the court went on to say. What troubles me is on page 1234 it says, we hold that this is not an adequate basis for rejecting a petitioner's application for suspension of deportation if the oral and written testimony offered is otherwise sufficient. Right. But here it was not sufficient. One can, if you look at this case, one can show that even though Vera lacked documentary evidence such as a lease, insurance bill or tax return to prove his physical presence. I'm sorry. Where are you reading from? Same page 1234. We hold that this is not an adequate basis for rejecting a petitioner's application for suspension of deportation if the oral and written testimony offered is otherwise sufficient. Here the oral testimony offered was not otherwise sufficient because in Vera Villegas there was a reason why he didn't have documentation. He was homeless and he was mentally ill. In this Urbina, in the Urbina case before the court, there's no reason why the Urbinas didn't have documentary evidence. They were not homeless. They were not mentally ill. But if they're credible, if they're believed, why do they need them? Because. I understand. You said we have to take them as credible because there was no adversarial ability finding. Because that wasn't enough to sustain the weight of the evidence. That wasn't enough to sustain. Even if believed. Even if believed, it's not enough. I suppose even if believed, it was not enough in that case because there was no explanation as to why there was a gap in the documentary evidence. This gap was noted by counsel for the government at the time. Can you cite me any case in any common law jurisdiction in the United States, any court anywhere, that says that the testimony of a credible witness is not enough to sustain a finding of fact? Anywhere. State, federal, social security, immigration, United States, Canada, Australia, any common law jurisdiction. Your Honor, I don't have such a case except to say. I don't believe there was such a case. I think it's just contrary to everything any of us have learned since law school. If you have a credible witness that makes a statement, that is sufficient to support a finding. I mean, I'm just astonished. Does General Holder know that you're arguing this? Well, our argument really stems from the motion to reopen itself, and that's the only. Well, that's the point. The point is that the lawyer or whoever it was that didn't argue that their statement was sufficient, that they didn't need receipts or envelopes or, you know, records. That's one of the arguments. That's not the argument they made. That's not the argument that was before the board. Right. That's not exhaustive to the board. The claim is that failure to make that argument was ineffective appellate advocacy. Well, to date they have not made that argument. They never made the argument to the board. Counsel present in the courtroom never raised that argument to the board, and they were represented. So, and that's not the counsel that was supposedly ineffective in this case. So this is something that is – was not raised to the board. I think you're over your time. I'm sorry, Your Honor. Well, thank you very much. Thank you, Your Honor. I just want to, also in Vera Viegas at page 1234 on the theme that we were just discussing, I'll note that the court goes on to say, while contemporaneous documentary evidence may add to the credibility of a witness, it is by no means indispensable. It is unreasonable to discredit the sworn testimony of a witness for the sole reason that there is no contemporaneous documentary evidence to support it, especially where there may be valid reasons why no such evidence exists. In this case, the Petitioners explained to the I.J. that the reason they didn't have documentation, more documentation from before 1994, is they didn't yet have any kind of legal working papers in the country or anything that would allow them to establish a paper trail.  that we traditionally simply ask the question, have you been here ten years? The answer is yes, that's it, end of case. Every case that I've seen so far involves some tangible evidence, utility receipts, canceled letters of some sort, testimony from neighbors, pastors, what have you. Where does that come from? Harrington. Your Honor, I think that just lends additional support to a Petitioner's credibility, but in this case where there was no adverse credibility finding, and there in fact were some documents from before 1994, but the I.J. chose to give them little weight. There was, for example, a letter from the church parish saying that they had been there since 1990, and there were a few other letters saying similar things. No, but I'm just asking, what we're heading for here is a published opinion perhaps that might say from now on there's no need to have any additional evidence other than the testimony of the Petitioner. Now, does that change the law? No. It certainly would change the practice. I don't believe it changes the law because Vera V. Harrington is following it. But again, Your Honor, all we're asking for in this case is a remand for the BIA to consider this question in the first instance. The BIA has never reached the ineffective assistance claim, and all the Petitioners have to show to get reopened. Well, what's your response on the ineffective assistance claim? You heard counsel who said that it was raised only in one context, but not in the relevant context here. Right. Well, the we've already discussed the language in the motion to reopen at page 129 that you asked counsel about where they claimed that they would like a chance to brief the issue. And then in their final motion to reopen briefing immediately before the decision on review in this case, they laid out, they cited Vera V. Agos, which we've been talking about, and they laid out this argument that documentary evidence is not absolutely necessary. And they argue at page 51 of the record, the IJ's finding that respondents had not met their continuous physical presence requirement was an erroneous decision. So they certainly brought the BIA's attention to the fact that there was something wrong with the initial continuous presence ruling that the IJ made. And the BIA has never evaluated that. Counsel, just a question for you on that. Some of my colleagues on the panel today, their questions seem to me to go to whether the quantum of evidence, the amount of evidence that the IJ had, absent a negative credibility determination that would show continuous physical presence. And that may be a relevant issue in the case. But on the question of this appeal, is there anything before us, is that issue presented to us on this appeal of the denial of the motion to reconsider? Because I thought that I might be wrong, that the only issue that we had today was whether there was ineffective assistance of counsel on the continuous physical presence issue. On direct appeal. Whether there was ineffective assistance in the direct appeal. That's the only question we've got. Yes, Your Honor, because the BIA has never considered that issue. And the quantum of evidence question may be relevant to whether the arguments were ineffective and what should have been argued before the BIA. But the question here is just whether there was ineffective assistance. Okay, now also, do you have any case from the Supreme Court or from our circuit, or even from some other circuit, that addresses when and the circumstances under which a party who files a pro se brief can then claim there was ineffective assistance of counsel on that appeal where they filed it pro se? Well, Your Honor, the Ray case, which we cited in our brief, is a case where the direct appeal brief, it's a case from this circuit, published decision. The petitioner claimed that his appellate brief, which was signed in pro per, was in fact the product of ineffective assistance of counsel. And this court remanded to the BIA to decide in the first instance whether the brief had been pro per or not. Even though it was signed pro per, the court recognized that it may not, in fact, have been pro per. There are two other Ninth Circuit cases which are also cited in our brief, where briefs, again, that purported to be in pro per, in fact, were not. And in this case, we requested judicial notice of an arrest warrant for the notary that the Urbinas indisputably used. And in that arrest warrant, it reports three or four other instances where this particular notary filed documents which the aliens claimed they had never signed and were not in pro per, even though the documents were represented to be in pro per. And that is this particular notary who the Urbinas were dealing with. But have the Urbinas ever said that they didn't file this brief pro per? What the Urbinas said is that Gladys told them. Sorry, go ahead. Did they ever say that they didn't file this brief pro per? What they said was Gladys said she was representing us on the appeal. They did not expressly say one way or the other, but the BIA has never made a finding on the issue either, and the government had never challenged that it was in pro per after they made that statement and that they argued that there was ineffective assistance on the appeal. So it really was never contested until the very last round of briefing in this case. They haven't had an opportunity one way or the other, but if this Court were to remand to the BIA for some findings as to whether the brief was in pro per, one could certainly expect that they could weigh in at that point with an affidavit that would clarify their position. Okay, thank you. You're welcome. Okay. And just one more statement, if I may. The government mentioned that there was no affidavit as would be required by Lozada, and, in fact, with the motion to reopen, there is an affidavit which attests to Gladys told us that she was going to handle the appeal, which is what the matter of Lozada requires. So if there are no further questions, I'll leave it at that. Lozada requires two things, right, but she's not a lawyer, Well, they did file against the first lawyer. Gladys, who's a notary, sent lawyers to represent them before the IJ, and they did comply. They filed against the first lawyer, and she's not a lawyer, so they can't report it. They can't file against her in their affidavit. They did explain that, as required, the circumstances of the representation and the fact that she told them she would handle the appeal. Okay, thank you. You're welcome. The case is argued. We'll stand some minutes. We'll next hear argument.
judges: Kozinski, O'scannlain, Gould